Carolina ZALDUONDO, Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY, Defendant.

Civil Action No. 10–1685 (RCL).

United States District Court, District of Columbia.

Feb. 27, 2012.

Opinion Denying Reconsideration May 23, 2012.

Denise Marie Clark, Law Office of Denise M. Clark PLLC, Washington, DC, for Plaintiff.

Bryan D. Bolton, Funk & Bolton, PA, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

ROYCE C. LAMBERTH, Chief Judge.

This is an ERISA suit, involving a plaintiff suing an insurance company for denying a claim for benefits under a health plan. Before the Court are defendant's Motion [6] to Dismiss the Amended Complaint and plaintiff's Motion [9] to File a Sur–Reply. Upon consideration of the motions, oppositions, replies, the entire record in this case, and the applicable law, the Court will grant in part and deny in part defendant's Motion [6] to Dismiss the Amended Complaint and deny plaintiff's Motion [9] to File a Sur–Reply.

## I. BACKGROUND

The plaintiff in this case is Carolina Zalduondo, who has had problems with one of her hips. Am. Compl. [5] ¶ 13, Mar. 14, 2011. In August 2009, she decided to pursue a surgical treatment for her hip problem. As an employee of an advertising agency in the D.C. area, she participated in her employer's health care plan. *Id.* ¶ 4–9. Aetna Life Insurance Company ("Aetna") is the service provider for that plan, pre-certifying medical services received by plan participants and adjudicating coverage and payment claims. *Id.* ¶ 9.

Only health care services provided by certain physicians within Aetna's network are covered by Ms. Zalduondo's plan, and she was allegedly unable to locate successfully an "in-network" physician who was capable of performing the surgery she required. *Id.* at ¶ 13. She called Aetna, seeking information regarding what steps she would have to take to get the services of a particular out-of-network physician ("Dr. Wolff") covered by the plan. *Id.* ¶ 14. She was told that to get his services covered, she first had to demonstrate that Aetna's network was deficient. *Id.* ¶ 16. It's unclear what sort of showing Ms. Zalduondo made to Aetna or what sort of review was undertaken, but in a letter dated September 1, 2009, Aetna denied her request to have Dr. Wolff's services treated as in-network services under the plan. *Id.* ¶ 17.

On September 11, 2009, Ms. Zalduondo received a letter from Aetna denying her request that the company pre-certify the

surgical procedure she was planning to have. *Id.* ¶ 21. She again called Aetna, apparently to dispute Aetna's decision, and the company arranged a telephone call between Dr. Wolff and the doctor from Aetna who had originally denied her pre-certification request. *Id.* ¶ 22–24. That call took place on September 14, 2009, only two days before Ms. Zalduondo had scheduled her surgery. *Id.* ¶¶ 24, 28. While it's unclear what transpired during this call, following Ms. Zalduondo's surgery on September 16, 2009, Aetna notified her that the surgery would not be covered for various reasons. *Id.* ¶ 29–30. Her dispute with Aetna about the sufficiency of its physician network persisted, however, with Aetna stating that she could have been adequately treated in-network by two physicians other than Dr. Wolff, *id.* ¶ 30, and Ms. Zalduondo maintaining that these physicians weren't qualified to perform her surgery. *Id.* ¶ 31–32.

She brought suit in this Court[1] against Aetna in October 2010 for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Her Amended Complaint brings two claims. First, she brings a claim for improper denial of benefits ("Claim 1") under 29 U.S.C. § 1132(a)(1)(B), which authorizes civil suits by plan participants to recover benefits due under a plan and to enforce participants' rights under a plan. Am. Compl. [5] ¶ 38–43. She alleges, in Claim 1, that Aetna failed to fully and fairly review her claim, failed to provide her with information regarding the bases of its decision to deny her claim, and violated a certain Department of Labor regulation that requires the "fiduciary" of a group health plan, in deciding an appeal of an adverse benefit determination based at

least in part upon a medical judgment, to consult with a "health care professional who has appropriate training and experience...." Am. Compl. [5] ¶¶ 40, 42–43 (citing 29 C.F.R. § 2560.503–1(h)(3)(iii)).

Her second claim ("Claim 2") is for breach of fiduciary duties. *Id.* ¶ 44–49 (citing 29 U.S.C. § 1132(a)(2)). She alleges that Aetna breached its fiduciary duties by failing to communicate with her properly about the availability of in-network providers, misrepresenting services covered by the plan, failing to inform her of the reasons for denying coverage of her out-of-network physician, and misrepresenting the qualifications of the company's in-network physicians. *Id.* ¶ 44–48. As to Claim 1, Ms. Zalduondo wants Aetna to pay her benefit claims at the in-network rates for Dr. Wolff "and all physicians and specialists who treated" her; to pay for "the specific procedures" performed by Dr. Wolff "and the anesthesiologist and surgical assistants involved" in the surgery; and to pay her attorney's fees and expenses. *Id.* at 9. As to Claim 2, she seeks declarations that the plan's administration is inconsistent with the plan documents and with regulations governing the claims appeal process. *Id.*

In February 2011, Aetna filed a Motion to Dismiss [4] 1, Feb. 25, 2011, but Judge Howell denied it as moot because Ms. Zalduondo amended her complaint a couple of weeks later. In March 2011, Aetna filed the instant Motion, seeking dismissal of Ms. Zalduondo's Amended Complaint. Def.'s Mot. Dismiss [6] 1, Mar. 31, 2011. Aetna's Motion to Dismiss became ripe at the end of April 2011. However, to bring to the Court's attention a recent Supreme Court decision with (purportedly) some bearing on its review of Aetna's Motion to

---

1. This case was originally before the Honorable Richard W. Roberts. However, in January 2001 it was reassigned by consent to the Honorable Beryl A. Howell, and then again reassigned to this Court in February 2012.

Dismiss, Ms. Zalduondo filed a Motion to File a Sur–Reply at the end of May 2011. Pl.'s Mot. File Sur–Reply [9] 1, May 26, 2011.

## II. LEGAL STANDARD

A motion to dismiss is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). The Court must "accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia,* 567 F.3d 672, 681 (D.C.Cir.2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009); *see also Atherton,* 567 F.3d at 681.

## III. STATUTORY FRAMEWORK

ERISA was enacted as a comprehensive regulation of private employee benefit plans for the purpose of protecting their participants and beneficiaries. *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). To enforce compliance with ERISA and the terms of ERISA plans, the statute authorizes participants or beneficiaries of such plans to bring suit in federal court to recover benefits due under the terms of their plans or to enforce their rights under such plans. *See* 29 U.S.C. § 1132(a)(1)(B). Participants or beneficiaries may also sue, via § 1132(a)(2), for "appropriate relief" under § 1109, which establishes personal liability for an ERISA fiduciary for breaches of fiduciary duties that result in losses to the plan. *See* 29 U.S.C. § 1109(a). Finally, plan beneficiaries or participants may sue under § 1132(a)(3) to enjoin violations of ERISA or of the terms of an ERISA plan, or to obtain "other appropriate equitable relief" to redress or enforce such violations. *Id.* § 1132(a)(3).

While ERISA does not explicitly require exhaustion of administrative remedies, the D.C. Circuit has held (alongside most other circuits) that plaintiffs seeking to recover benefits under ERISA plans must exhaust available administrative remedies under those plans before bringing a lawsuit in federal court. *Commc'ns Workers of Amer. v. Amer. Tel. & Tel. Co.,* 40 F.3d 426, 431–32 (D.C.Cir.1994); *see also Dorsey v. Jacobson Holman, PLLC,* 707 F.Supp.2d 21, 27 (D.D.C.2010). The exhaustion requirement applies to claims for benefits as well as claims for breach of fiduciary duty, *Dorsey,* 707 F.Supp.2d at 27 (citing *Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir.1990)), and "prevents premature or unnecessary judicial interference with plan administrators." *Cox v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters,* 603 F.Supp.2d 23, 29 (D.D.C.2009). Furthermore, requiring plan participants to exhaust their administrative remedies enables plan administrators to manage plans efficiently, correct their errors outside of court, interpret applicable plan provisions, and assemble a factual record that would assist a review-

ing court in evaluating their actions. *See Makar v. Health Care Corp. of Mid–Atlantic (CareFirst)*, 872 F.2d 80, 83 (4th Cir.1989).

## IV. AETNA'S MOTION TO DISMISS

Aetna presents two principal arguments[2] in its Motion: first, that certain components of Ms. Zalduondo's claim for denial of benefits in Claim 1 must be dismissed for failure to exhaust administrative remedies; and second, that Claim 2 should be dismissed because Ms. Zalduondo's Amended Complaint only alleges harm to herself, rather than harm to the plan. The Court will discuss these arguments, and Ms. Zalduondo's responses, in turn.

### A. Claim 1: Improper Denial of Benefits

As to the exhaustion issue, the Court finds that Ms. Zalduondo's allegations in Claim 1 are insufficient as to most aspects of that claim. As stated above, plaintiffs seeking to recover benefits under ERISA plans are required to exhaust their administrative remedies before filing suit. *Commc'ns Workers*, 40 F.3d at 431–32. While Ms. Zalduondo's complaint has a section titled "Exhaustion of Administrative Remedies"—which would have been an ideal location to provide specifics on this issue—that section fails to allege the necessary facts; instead, it curiously incorporates the "foregoing" paragraphs, even though none of the paragraphs preceding the section contain any facts related to her

pursuit of administrative appeals of Aetna's alleged errors and omissions. *See* Am. Compl. [5] ¶ 3.

Ms. Zalduondo's only reference in her Amended Complaint to facts that, if proved, would demonstrate exhaustion of administrative remedies is her statement, in paragraph 37, that she "twice appealed [Aetna's] refusal to pay Dr. Wolff's treatment at the in-network rate...." *Id.* ¶ 37. By contrast, she pleads no facts indicating that she exhausted her claim that Aetna improperly denied coverage for the surgical procedure on various grounds, including that the procedure was "experimental" or "investigational." *Id.* ¶ 29. Ms. Zalduondo was required to seek an administrative resolution of this distinct issue before asserting it as a claim in this Court, and to allege facts in her Amended Complaint that, if true, would prove that she did so. Such facts, however, are not alleged.

■ Ms. Zalduondo attempts to remedy this pleading deficiency by attaching evidence to her Opposition to Aetna's Motion to Dismiss. Pl.'s Opp'n [7] 3, Apr. 19, 2011. However, the Court, in reviewing that Motion, may only consider "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C.Cir.2006). The evidence attached to Ms. Zalduondo's Opposition was not attached to her Amended

---

2. Aetna also argues, although somewhat half-heartedly, that Ms. Zalduondo's ERISA claims should be dismissed because she fails, in her Amended Complaint, to allege that she is an employee of WP Group USA, Inc., a plan participant, or a plan beneficiary. Def.'s Mem. [6–1] 2. Her claims require that she be a plan "participant" or "beneficiary" to obtain relief. *See* 29 U.S.C. § 1132(a)(1)-(3). However, Aetna's argument fails because the

Court, on a motion to dismiss, must give Ms. Zalduondo the benefit of all reasonable inferences that can be derived from the facts alleged, *Kowal*, 16 F.3d at 1276, and it is more than reasonable to infer that she was an employee of WP Group USA, Inc., and a plan "participant" or "beneficiary," given the course of conduct between the parties as she sought coverage for the services of her out-of-network doctor.

Complaint, and while a document doesn't have to be named to be "incorporated" in a complaint, *see Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997), there has to be something in the Amended Complaint referencing the specific documents she attaches to her Opposition. However, Ms. Zalduondo's Amended Complaint does not "incorporate" these documents in any sense, and therefore the Court will not consider them.

■ Accordingly, the Court will dismiss from the ambit of Claim 1 of Ms. Zalduondo's Amended Complaint any claims *other than* her claim that Aetna improperly refused to pay for Dr. Wolff's surgical procedure at the company's in-network rates. While Aetna, in its proposed order, asks the Court to dismiss the Amended Complaint "in its entirety," *see* Proposed Order [6–1] 1, its Motion to Dismiss fails to challenge Claim 1 to the extent that it is based on the allegation that Aetna improperly denied Ms. Zalduondo's request to have Dr. Wolff's surgical procedure covered at the in-network rate. Therefore, that aspect of Claim 1 survives its Motion to Dismiss.

### B. Claim 2: Breach of Fiduciary Duties

The Court concludes that Ms. Zalduondo's Amended Complaint fails to state a claim for breach of fiduciary duty in Claim 2, whether brought under 29 U.S.C. § 1132(a)(2) or § 1132(a)(3).

■ As an initial matter, Ms. Zalduondo's Amended Complaint asserts 29 U.S.C. § 1132(a)(2), not § 1132(a)(3), as the basis for her breach of fiduciary claim. Am. Compl. [5] ¶ 49. Section 1132(a)(2), as specified above, authorizes plan participants to sue a fiduciary on behalf of the plan for "appropriate relief" under § 1109. Section 1109 establishes personal liability for an ERISA fiduciary who breaches fidu-

ciary duties that result in losses to the plan. *See* 29 U.S.C. § 1109(a). In Aetna's Motion to Dismiss, it argues that Ms. Zalduondo's Amended Complaint fails to state a claim for relief under Section 1132(a)(2) because the only harm Ms. Zalduondo alleges is harm to *herself,* rather than harm to the ERISA plan. Def.'s Mem. [6–1] 7. The Court agrees with Aetna, given that the Supreme Court has stated that the principal concern of § 1109 is with "misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Indeed, the Supreme Court has stated clearly that § 1132(a)(2) "does not provide a remedy for individual beneficiaries." *Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In short, Ms. Zalduondo doesn't allege that Aetna's various errors and omissions resulted in harm to the plan, and so Claim 2 as alleged may not go forward under § 1132(a)(2).

■ Ms. Zalduondo argues in her Opposition that § 1132(a)(3) provides an alternative basis for relief. Pl.'s Opp'n [7] 4. However, the Court concludes that even if Claim 2 is construed as brought under that ERISA provision, the claim fails to survive Aetna's Motion to Dismiss.

■ As stated above, § 1132(a)(3) of ERISA permits plan beneficiaries or participants to bring suit to enjoin violations of ERISA or of the terms of an ERISA plan, or to obtain "other appropriate equitable relief" to redress or enforce such violations. 29 U.S.C. § 1132(a)(3). While the D.C. Circuit has not decided whether a plaintiff may simultaneously pursue a claim for denial of benefits under § 1132(a)(1)(B) and a claim for breach of fiduciary duty under § 1132(a)(3), the Su-

preme Court has noted that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp.*, 516 U.S. at 515, 116 S.Ct. 1065 (quoting 29 U.S.C. § 1132(a)(3)). Section 1132(a)(3) is a "catchall provision" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere remedy." *Id.* at 512, 116 S.Ct. 1065. Courts in this Circuit have generally followed the view of the majority of circuits that a breach of fiduciary claim under § 1132(a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B). *See Kifafi v. Hilton Hotels Ret. Plan*, 616 F.Supp.2d 7, 39 (D.D.C. 2009); *Clark v. Feder Semo & Bard, P.C.*, 527 F.Supp.2d 112, 116 (D.D.C.2007); *Crummett v. Metro. Life Ins. Co.*, No. 06–01450(HHK), 2007 WL 2071704, at *2–3 (D.D.C. July 16, 2007).

The Court finds that equitable relief pursuant to § 1132(a)(3) is not appropriate in this case based on the allegations in the Amended Complaint. The only harm alleged in Ms. Zalduondo's Amended Complaint—that is, the harm suffered by her through Aetna's allegedly improper denial of her request to pay for Dr. Wolff's medical services at in-network rates—is adequately provided for in the denial-of-benefits claim brought pursuant to § 1132(a)(1)(B). Ms. Zalduondo does not allege harm to herself from the apparently isolated administrative errors or omissions she lists in paragraphs 44 to 48 of her Amended Complaint that is separable from the harm flowing from the allegedly improper denial of benefits, and therefore she has not pled facts establishing her entitlement to equitable relief under § 1132(a)(3). *See Kamler v. H/N Tele-*

*comm. Servs., Inc.*, 305 F.3d 672, 681 (7th Cir.2002).

Ms. Zalduondo suggests, based on a district court case out of Pennsylvania, that the Court should defer dismissing her breach of fiduciary claim until it is determined that adequate relief is actually available under § 1132(a)(1)(B). Pl.'s Opp'n [7] 5 (citing *Parente v. Bell Atlantic Pennsylvania*, No. CIV. A. 99–5478, 2000 WL 419981, at *3 (E.D.Pa. Apr. 18, 2000)). But the Court finds that this out-of-circuit authority conflicts with the well-reasoned views of courts in this Circuit, which have found that the determination of adequacy must be made based upon the allegations in the complaint, and not upon the merits outcome of particular claims. *See, e.g., Stephens v. U.S. Airways Group*, 555 F.Supp.2d 112, 120 (D.D.C.2008); *Crummett*, 2007 WL 2071704, at *3.

Therefore, Aetna's Motion to Dismiss will be granted with respect to Claim 2 of Ms. Zalduondo's Amended Complaint.

## V. MS. ZALDUONDO'S MOTION FOR LEAVE TO FILE A SUR–REPLY

Ms. Zalduondo seeks leave to file a surreply, based upon her contention that a recent case from the Supreme Court is relevant to the Court's resolution of Aetna's Motion to Dismiss. Pl.'s Mot. Leave [9] 1, May 26, 2011. Ms. Zalduondo argues that *CIGNA Corp. v. Amara*, —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011) "clarifies" that breach of fiduciary claims brought under 29 U.S.C. § 1132(a)(3) are not limited to relief to the plan, but also permit individualized relief. Pl.'s Reply [11] 2, June 20, 2011. However, there has been clarity on this point among courts for many years. *See Varity*, 516 U.S. at 507–16, 116 S.Ct. 1065. In any case, the Court has read the Supreme Court's decision in *Amara*, and Ms. Zalduondo's attached Sur–Reply, and con-

cludes that neither is helpful is resolving the issues before the Court. Therefore Ms. Zalduondo's Motion [9] to File a Sur–Reply will be denied.

## VI. CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part defendant's Motion [6] to Dismiss the Amended Complaint and deny plaintiff's Motion [9] to File a Sur–Reply.

A separate Order consistent with this Memorandum Opinion shall issue this date.

### *MEMORANDUM OPINION*

Before the Court are two motions filed by plaintiff Carolina Zalduondo ("plaintiff"). The first is a Motion for Reconsideration [17] asking for a reversal of this Court's February 27, 2012, interlocutory Order [13] dismissing plaintiff's breach of fiduciary duty claim. The second is plaintiff's Motion for Leave to file a Second Amended Complaint [18]. Upon consideration of the motions [17, 18], the oppositions [21, 22], the replies [24, 25], the entire record herein and the applicable law, the Motion for Reconsideration [17] and the Motion for Leave to file a Second Amended Complaint [18] are denied. However, eight paragraphs in the Second Amended Complaint, specifically paragraphs 4, 5, 23, 24, 33, 34, 37, and 38, will be deemed incorporated into plaintiff's Amended Complaint [5]. Having now demonstrated exhaustion, plaintiff will be allowed to proceed on her claims for denial of benefits and for the improper refusal to pay for her procedure at Aetna's ("defendant") in-network rate.

## I. FACTUAL BACKGROUND

The facts of this case are set out in this Court's prior opinion, *Zalduondo v. Aetna Life Ins. Co.*, 845 F.Supp.2d 146 (D.D.C. 2012), and so only the applicable facts are set out here. Underlying this action was defendant Aetna Life Insurance Company's decision not to pay for plaintiff's hip operation. Am. Compl. [5] ¶¶ 26–30, Mar. 14, 2011. Plaintiff's Amended Complaint sought relief under § 502 of the Employee Retirement Income Security Act ("ERISA"), codified as 29 U.S.C. § 1132. *Id.* 150–51. Specifically, plaintiff brought claims under § 1132(a)(1)(B) for the improper denial of benefits and for Aetna's refusal to pay her surgeon at the company's in-network rate, and under § 1132(a)(2) for breach of fiduciary duty. Am. Compl. [5] ¶¶ 38–49, Prayer for Relief A. Plaintiff clarified her pleadings in her Opposition Motion, claiming that § 1132(a)(3) provided an alternative basis of relief. Pl.'s Opp'n [7] 4, Apr. 19, 2011.

By way of this Court's February 27, 2012, Order and Memorandum Opinion, all of plaintiff's claims save one were dismissed. Order [13]; Mem. Op. [14] 10. Relief under § 1132(a)(2) was held inapplicable because § 1132(a)(2) authorizes plan participants to sue when then *plan* has suffered a loss due to a breach of fiduciary duty, and in this case the only alleged injury is to the plaintiff. *Id.* 154–55. This Court likewise held that § 1132(a)(3) could not survive the defendant's 12(b)(6) motion because, as a general rule in this Circuit, "a claim under § 1132(a)(3) cannot stand where plaintiff has an adequate remedy for her injuries under § 1132(a)(1)(B)." *Id.* 155. As for plaintiff's claims under § 1132(a)(1)(B), this Court held that the facts plead did not establish plaintiff's exhaustion of administration remedies as required by ERISA, and thus the pleadings were factually insufficient to establish a denial of benefits claim. *Id.* 153–54. However, plaintiff was allowed to proceed on her claim that Aetna improperly refused to pay for her medical treatment at the company's in-network rate. *Id.*

Plaintiff subsequently filed two motions on March 8, 2012: a Motion for Reconsideration asking the Court's to review and reverse its ruling as to her claim under § 1132(a)(3), and a Motion for Leave to file a Second Amended Complaint. Mot. Recons. [17]; Mot. Leave 2d Am. Compl. [18]. Plaintiff's Second Amended Complaint attempts to do four things: first, plaintiff pleads additional facts to demonstrate her exhaustion of administrative remedies in support of her denial of benefits claim under § 1132(a)(1)(B); second, plaintiff wishes to amend her complaint so as to clarify to the Court that she intended to seek relief under § 1132(a)(3); third, she seeks to add WPP Group Medical Plan ("Plan"), and WPP Group USA, Inc. ("Plan Administrator"), as defendants; and fourth, plaintiff seeks relief for breach of fiduciary duties from both the Plan and Plan Administrator. Pl.'s Supp. Mem. [18–1] 2–4; 2d Am. Compl. [18–2] ¶¶ 4–5, 23–38, 43–57.

## II. PLAINTIFF'S MOTION FOR RE-CONSIDERATION

### A. Reconsideration Under Federal Rule of Civil Procedure 54(b).

 Federal Rule of Civil Procedure 54(b) allows the trial court to modify or reverse its interlocutory decisions at any time prior to the entry of a final judgment. *Cobell v. Norton,* 355 F.Supp.2d 531, 539 (D.D.C.2005). While this rule provides a procedural mechanism for courts to reconsider their prior opinions, the actual language of Rule 54(b) sets forth little guidance as to when such review is appropriate. To fill this gap, courts in this Circuit have held that "relief upon reconsideration ... pursuant to Rule 54(b) is available 'as justice requires,'" *Hoffman v. District of Columbia,* 681 F.Supp.2d 86, 90 (D.D.C.2010) *(quoting Childers v. Slater,* 197 F.R.D. 185, 190 (D.D.C.2000)), but have cautioned that, as a general rule, courts should not revisit their prior decisions "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice," *Lederman v. United States,* 539 F.Supp.2d 1, 2 (D.D.C.2008) *(quoting Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811, (1988)). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell,* 355 F.Supp.2d at 539. Justice may require reconsideration when (1) "there was a patent misunderstanding of the parties," (2) "where a decision was made that exceeded the issues presented," (3) "where a court failed to consider controlling law," or (4) "where a significant change in the law occurred after the decision was rendered." *Pueschel v. Nat'l Air Traffic Controllers' Ass'n,* 606 F.Supp.2d 82, 85 (D.D.C.2009).

### B. The Court Denies Plaintiff's Motion for Reconsideration.

 Plaintiff argues that this Court should reverse on reconsideration its February 27 ruling as to plaintiff's claim under § 1132(a)(3) because, plaintiff asserts, at "least one case in this circuit has been decided in the time between the plaintiff's Sur–Reply and the time the Court issued its Order, which supports Plaintiff's position...." Pl.'s Supp. Mem. [17–1] 3. Namely, plaintiff asserts that one of the cases that the Court cited in its Memorandum Opinion, *Clark v. Feder, Semo & Bard, P.C.,* 527 F.Supp.2d 112, 116 (D.D.C. 2007) *("Clark I")*, was "reversed in light of the Supreme Court's decision in *Amara"*

prior to the Court's Order [13].[1] *Id.* 3–4 (*citing Clark v. Feder, Semo & Bard, P.C.,* 808 F.Supp.2d 219, 225 (D.D.C.2012) (*"Clark VI"*)).[2] Plaintiff further asserts that the Court in *Clark VI* allowed a similarly situated plaintiff to proceed in the alternative under both § 1132(a)(1)(B) and § 1132(a)(3) "until all material facts were resolved concerning whether there was an adequate remedy under the Plan ... the opposite of what this Court decided in its February 27, 2012 Opinion." *Id.* 4. In support of her argument, plaintiff also cites *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452 (7th Cir.2010); *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 782 F.Supp.2d 294, 309 (S.D.Tex. 2011); *Fredericks v. Hartford Life Ins. Co.,* 488 F.Supp.2d 210, 213 (N.D.N.Y. 2007), none of which are controlling in this Circuit. *Id.* 4–5. Plaintiff claims that she should be allowed to proceed in the alternative because "the Plan may not properly provide for the benefits she is seeking." *Id.* 5.

Plaintiff has not demonstrated that the Court's decision was clearly erroneous or unjust, or that her case falls into the category of "extraordinary circumstances" justifying reversal. *Lederman,* 539 F.Supp.2d at 2. She has not argued that this Court patently misunderstood the parties, that our decision exceeded the issues presented or that this Court failed to consider controlling law. *Pueschel,* 606 F.Supp.2d at 85. At best, plaintiff argues that the Court's decision in *Clark VI,* along with the cases cited from other circuits, demonstrates that a "significant change in the law occurred after the decision was rendered." *Id.* However, plaintiff's argument fails for three important reasons.

Most obviously, Plaintiff fails to cite a single case decided *after* this Court's February 29, 2012, Order. Plaintiff posits that a single case, *Clark VI,* decided *before* this Court issued its Order, supports plaintiff's position, namely that she should be allowed to simultaneously pursue claims under § 1132(a)(1)(B) and 1132(a)(3) until it is clear to the plaintiff that there is an "adequate remedy under the Plan [or not]," at which time she will presumably elect to pursue a claim under one of the two statutes. Pl.'s Supp. Mem. [17–1] 3. Plaintiff's motion implies without accusation that this Court either failed to consider recent case law before deciding plaintiff's motion or that this Court decided plaintiff's motion before publication of *Clark VI* in September 2011, yet intention-

---

**1.** Plaintiff filed a Motion for Leave to file a Sur–Reply based on her belief that the Supreme Court's ruling in *Cigna Corp. v. Amara,* —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), was relevant to the instant case. Pl.'s Mot. Leave [9] 1, May 26, 2011. After consideration, this Court determined that *Cigna* was not helpful and subsequently denied plaintiff's motion. Mem. Op. [14] 161.

**2.** Six related cases captioned *"Clark v. Feder Semo & Bard, P.C."* have been decided by the Court. Four of those cases dealt specifically with Clark's substantive claims: 527 F.Supp.2d 112 (D.D.C.2007) (*"Clark I"*), 697 F.Supp.2d 24 (D.D.C.2010) (*"Clark IV"*), which was vacated in part by 736 F.Supp.2d 222 (D.D.C.2010) (*"Clark V"*); and 808

F.Supp.2d 219 (D.D.C.2011) (*"Clark VI"*). In 560 F.Supp.2d 1 (D.D.C.2008) (*"Clark II"*), the Court ruled on Clark's motion for leave to file an amended complaint; and in 634 F.Supp.2d 99 (D.D.C.2009) (*"Clark III"*), the Court dismissed Clark's claims against third party defendants. Noting that Judge Bates in *Clark VI* referred to 697 F.Supp.2d 24 as *Clark II,* the Court decides that in the interest of clarity we will count each *Clark* case chronologically and number them accordingly. 808 F.Supp.2d at 221. Thus, Judge Bates's *Clark II* is this Court's *Clark IV.* Nonetheless, plaintiff incorrectly abbreviated the 2011 *Clark* case as *"Clark II;"* it is now abbreviated as *Clark VI* (and would have been abbreviated as *Clark IV* following Judge Bates's numbering scheme). Pl.'s Supp. Mem. [17–1] 4.

ally failed to publish the decision for more than five months. Unless some space-time warping event has caused time to run in reverse, plaintiff is unable to show, based on the information proffered, that a significant change in the law occurred *after* this Court's decision.

Second, plaintiff's reading of the *Clark VI* is overbroad. Plaintiff asserts that the ruling in *Clark VI* allowed plaintiff Clark to proceed to trial under both §§ 1132(a)(1)(B) and 1132(a)(3), but only recover under one of the statutes, which she would elect after trial. Pl.'s Reply [25] ¶ 3, Apr. 13, 2012. The language of the case belies plaintiff's interpretation. Judge Bates made clear that the plaintiff could not "proceed" under both statutes, a fact repeated no less than three times throughout the opinion. 808 F.Supp.2d at 224–26, 234. This Court understands Judge Bates's language to mean that plaintiff was required to choose the statute under which she sought relief before proceeding to any other phase of litigation.

Plaintiff's motion likewise fails because none of the case law she cited alters existing law. For example, *Clark VI* neither overruled *Clark I* nor is it applicable to the present case because it presents a distinguishable factual situation. *Clark VI* was the last in a series of cases brought by plaintiff Denise Clark against her retirement plan and two of its trustees. 808 F.Supp.2d at 221. After the termination of her company's retirement plan, Clark received a retirement payout that was pro rata reduced to match the retirement plan's assets. *Clark IV*, 697 F.Supp.2d at 29. Given that the retirement fund's assets had been distributed and there was a legitimate question as to whether monetary relief would be available, Clark argued that the Court should allow her to proceed under both §§ 1132(a)(1)(B) and 1132(a)(3). *Clark VI*, 808 F.Supp.2d at 225. While acknowledging that this Circuit has not decided whether a plaintiff can bring simultaneous claims under both provisions, the *Clark VI* Court affirmed that a "majority of circuits that have decided this issue have held that a breach of fiduciary duty claim cannot stand where the plaintiff has an adequate remedy through a claim for benefits under § 1132(a)(1)(B)." *Id.* at 225 (citations omitted); Mem. Op. 160. The Court held that because it was unclear whether there were adequate assets in the plan to provide a legal remedy, and because the Supreme Court's decision in *CIGNA Corp. v. Amara,* — U.S. —, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011) allowed equitable relief including monetary compensation, Clark could "proceed on a claim under **either** § 1132(a)(1)(B) or § 1132(a)(3), **but not both.**" *Id.* at 226 (*citing CIGNA Corp.,* 131 S.Ct. at 1880) (emphasis added).[3]

In the present case plaintiff has not pleaded that the plan has insufficient assets to provide adequate relief under § 1132(a)(1)(B) and there is no prima facie evidence that tends to show that recovery under the statute would be inadequate.[4] She simply contends that she has "no idea whether there is an adequate remedy" because she is "unaware whether there is sufficient relief under the Plan." Pl.'s Supp. Mem. [17–1] 5. Plaintiff's injury amounts to no more than the difference between what plaintiff paid for her procedure after Aetna refused to cover her sur-

---

**3.** The Court notes that plaintiff Clark was allow to maintain separate actions under both § 1132(a)(1)(B) and § 1132(a)(3) for separate and distinct claims. *Clark VI,* 808 F.Supp.2d at 230–31, 234.

**4.** This Court also notes that we are not bound by Judge Bates's decision in *Clark VI.*

gery and her copayment, if any, had Aetna covered the procedure. Because Aetna's business is to pay the medical bills of those it insures, the Court reasonably infers that there is indeed adequate relief under the plan to cover the cost of her procedure. More importantly, this Court already held that plaintiff failed to allege facts that would entitle her to an equitable claim under § 1132(a)(3). Mem. Op. [14] 160–61. Since plaintiff has made no new factual allegations demonstrating her right to equitable relief, the Court can do nothing but stand by its previous decision.

Given that there has been no significant change in the law since the Court's Order, plaintiff has failed to demonstrate that "reconsideration is necessary under the relevant circumstances." *Pueschel,* 606 F.Supp.2d at 85; *Cobell,* 355 F.Supp.2d at 539. Therefore, plaintiff's Motion for Reconsideration is denied.

## III. PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Plaintiff's Second Amended Complaint adds additional facts to demonstrate her exhaustion of administrative remedies in support of her denial of benefits claim under § 1132(a)(1)(B); clarifies that she intended to seek relief under § 1132(a)(3); adds the Plan and Plan Administrator as defendants; and claims relief for both the Plan and Plan Administrator for their alleged breach of fiduciary duties. Pl.'s Supp. Mem. [18–1] 2–4; 2d Am. Compl. [18–2] ¶¶ 43–57. Defendant objects to plaintiff's Motion arguing that it should be denied as futile, unduly late, and because it would cause substantial prejudice to the defendant. Def.'s Op. [22] ¶ 13, Mar. 26, 2012. Defendant also asks the Court to condition any future amendments on payment of Aetna's reasonable attorney's fees. *Id.* ¶¶ 14–15.

### A. Legal Standard Under Federal Rule of Civil Procedure 15(a)(2).

Rule 15 allows a party to "amend its pleading once as a matter of course within" 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. FED.R.CIV.P. 15(a). After such time, a party may amend its pleading "only with the opposing party's written consent or the court's leave." FED.R.CIV.P. (15)(a)(2). While the grant or denial of leave lies in the sound discretion of the court, Rule 15 directs that the "court should freely give leave when justice so requires." *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996). The court should deny leave only where there is an "apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, the court should not turn the pleading phase into a "game of skill in which one misstep by counsel may be decisive to the outcome...." *Id.* at 181–82, 83 S.Ct. 227. Instead, "where the facts or circumstances relied upon by the plaintiff may be a proper subject of relief, he out to be afforded an opportunity to test his claim on the merits." *Id.*

A court may deny an amendment as futile "if it merely restates the same facts as the original complaint" or fails to advance a legal theory that would survive a motion to dismiss. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930, 945 (D.C.Cir.2004); *Robinson v. Detroit News, Inc.,* 211 F.Supp.2d 101, 114 (D.D.C.2002) (*citing* 3 MOORE'S FED.

PRAC. § 15.15[3] (3d ed. 2000)). Review under these circumstances is the same as a review after a Rule 12(b)(6) motion. *In re Interbank Funding Corp. Securities Litig.*, 629 F.3d 213, 215–16 (D.C.Cir.2010) (citations omitted). That is, the Court will treat all of plaintiff's factual allegations as true and give plaintiff the benefit of all inference flowing from the alleged facts. *Id.*

To survive a 12(b)(6) motion the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a complaint need not contain detailed factual allegations, it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. 1955) (alterations in original). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. The Court Denies Plaintiff's Motion for Leave to File a Second Amended Complaint but Incorporates Her New Factual Allegations into Her First Amended Complaint.**

■ This Court dismissed plaintiff's claim for denial of benefits under § 1132(a)(1)(B) because the plaintiff did not plead sufficient facts to establish that she exhausted her administrative remedies as implicitly required by ERISA. Mem. Op. [14] 152–53 (*citing Commc'ns Workers of Amer. v. Amer. Tel. & Tel. Co.*, 40 F.3d 426, 431–32 (D.C.Cir.1994); *Dorsey v. Jacobson Holman, PLLC*, 707 F.Supp.2d 21, 27 (D.D.C.2010)). Plaintiff's Second Amended Complaint includes new factual allegations that if true, would demonstrate that Aetna made a "final determination" in her case, i.e., that plaintiff exhausted her administrative remedies. 2d Am. Compl. [18–2] ¶¶ 4–5, 38. Plaintiff's new factual allegations appearing in paragraphs 4, 5, 23, 24, 33, 34, 37, and 38 of her Second Amended Complaint are hereby incorporated into her Amended Complaint. Because these additional facts establish that plaintiff exhausted her administrative remedies, she will now be allowed to proceed on two claims under § 1132(a)(1)(B): the claim that Aetna improperly refused to pay her surgeon at the company's in-network rate and her claim that Aetna improperly denied her coverage for her procedure.

**C. The Court Denies Plaintiff's Motion for Leave to Amend Her Complaint in Order to "Clarify" Her Prayer for Relief Under 29 U.S.C. § 1132(a)(3).**

■ Plaintiff's request to "clarify" to the Court that she intended to seek relief under § 1132(a)(3) is both unnecessary and futile. Plaintiff first argues that she should be granted leave to clarify this point because "[o]ne reason for dismissal was that Aetna and the Court were unclear as to whether Plaintiff was bringing

her second claim under" that statute.[5] Mot. Leave 2d Am. Compl. [18] ¶ 3. Plaintiff later argues that this clarification is meant to be a "technical correction" that would "only apply to the extent that the Court grants Plaintiff's Motion for Reconsideration." Pl.'s Reply [24] ¶ 2, Mar. 12, 2012.

However, plaintiff already clarified that she sought relief under § 1132(a)(3). Pl.'s Opp'n [7] 4. The Court considered this claim, ruled that it failed a Rule 12(b)(6) analysis and subsequently dismissed the claim. Mem. Op. 160. Additionally, plaintiff filed a Motion for Reconsideration requesting that this Court reverse its ruling as to her § 1132(a)(3) claim, a motion that this Court denied. Having already found that plaintiff may not bring an action under § 1132(a)(3) where they have an adequate remedy through a claim for benefits under § 1132(a)(1)(B), allowing plaintiff to amend her complaint would amount to giving plaintiff a third bite of the apple. *Id.* Such action would prejudice the defendant and waste judicial resources. Therefore, her motion is denied.

### D. The Court Denies plaintiff's Motion to Add the Plan and Plan Administrator as Parties and to Assert a Claim for Breach of Fiduciary Duty Against Them.

▮▮▮▮ Plaintiff's Motion for Leave to file a Second Amended Complaint to add the Plan and Plan Administrator as parties in order to assert a claim for breach of fiduciary duty is likewise denied for futility. As an initial matter, plaintiff's Second Amended Complaint fails to identify whether she wishes to bring suit against the Plan and Plan Administrator under § 1132(a)(2) or § 1132(a)(3). *See* 2d Am. Compl. [18–2] ¶¶ 55–7. In her supporting memorandum plaintiff merely claims that

she should be allowed to seek relief for breach of fiduciary duty on the part of the Plan Administrator. Pl.'s Supp. Mem. [18–1] 4. Plaintiff's prayer for relief requests that the Court "[a]ward to the Plan such other equitable and remedial relief as the Court deems appropriate." 2d Am. Compl. [18–2] 11. As previously clarified by this Court, § 1132(a)(2) allows for recovery on behalf of the Plan for breaches of fiduciary duty that cause loss to the Plan, while § 1132(a)(3) allows for individual equitable relief to enjoin or enforce ERISA violations. Mem. Op. 160. Here, the gravamen of plaintiff's allegation is personal harm via Aetna's refusal to pay for her operation. 2d Am. Compl. [18–2] ¶¶ 38–42. A legal remedy under § 1132(a)(1)(B) would make her whole. Since a plaintiff generally cannot bring suit under § 1132(a)(3) where there is an available remedy under § 1132(a)(1)(B), plaintiff has not stated a claim under § 1132(a)(3). *Clark VI,* 808 F.Supp.2d at 225; Mem. Op. [14] 160.

Additionally, plaintiff presents no new facts to support her breach of fiduciary duty claim against the two new named defendants. She merely asserts, upon "information and belief" without any supporting facts that WPP Group USA is both the plan sponsor and plan administrator and is thus a fiduciary "responsible for ensuring compliance of the Plan, even if it delegates tasks to other parties" and is liable for "fail[ing] to properly monitor its service provider [Aetna]" to ensure that they acted in compliance with the plan. 2d Am. Compl. [18–2] ¶¶ 8–10, 55–57.

▮▮▮▮ Under ERISA, a person or entity is a fiduciary, *inter alia,* when they "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authori-

---

5. This is an inaccurate reading of the Court's decision.

ty or control respecting management or disposition of its assets ... or he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). While a plan sponsor can be the plan administrator this is not automatically the case. *See Varity Corp. v. Howe*, 516 U.S. 489, 526, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); § 1002(16)(A)(ii). Congress specifically "define[d] 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Id.* at 527, 116 S.Ct. 1065 (*citing Mertens v. Hewitt Associates*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). "When the employer is not acting as plan administrator," the fiduciary duty under ERISA "is not activated." *Id.* at 528, 116 S.Ct. 1065.

Plaintiff alleges no facts to demonstrate that WPP Group USA held any "discretionary authority or responsibility in the administration of the plan." § 1002(21)(A). On the contrary, all her allegations cite Aetna as the party with control over the plan: it was Aetna that provided a medical network of physicians under the plan; Aetna who exercised "discretion and control" over the plan, and Aetna who made the final determination in her case. 2d Am. Compl. [18–2] ¶¶ 5, 11–12.

Because plaintiff's Second Amended Complaint does no more than restate the same facts as the original complaint in support of her claim against the new parties, and because the facts alleged are no more than "labels and conclusions" that are insufficient on their face to state a claim for relief, Plaintiff's motion, if granted, would not survive a motion to dismiss. *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 945; *Robinson*, 211 F.Supp.2d at 114; *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955. Thus, Plaintiff's motion to add new

parties and assert a claim against them for breach of fiduciary duty is futile.

### E. The Court Denies Defendant's Request to Condition Any Future Motions for Leave to Amend on the Payment of Attorney's Fees.

Defendant requests that the Court condition any further amendments on plaintiff's payment of defendant's reasonable attorney's fees. Def.'s Op. [22] ¶¶ 14–15. The Court has reviewed the cases cited by defendant (*Combustion Products Mgmt. Inc. v. AES Corp.*, No. 05 Civ. 00929, 2006 WL 6816644 (N.D.N.Y.2006) and *Global Energy & Mgmt., LLC v. Xethanol Corp.*, No. 07 Civ. 11049(NRB), 2009 WL 464449 (S.D.N.Y.2009)) and believes such an order to be premature at this time.

## IV. CONCLUSION

For the reasons stated above, the Court denies plaintiff's Motion for Reconsideration and plaintiff's Motion for Leave to file a Second Amended Complaint, but will consider paragraphs 4, 5, 23, 24, 33, 34, 37, and 38 of her Second Amended Complaint incorporated into her Amended Complaint. Plaintiff will be allowed to pursue her denial of benefits claim under § 1132(a)(1)(B).

A separate Order consistent with this Memorandum Opinion will be issued on this date.